UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ST. VINCENT'S MULTISPECIALTY GROUP, INC., <br>   *Plaintiff*, <br><br> v. <br><br> CPI/AHP CROSS STREET MOB OWNER, L.L.C., <br>   *Defendant*. | No. 3:21-cv-01705 (VAB) |

**RULING AND ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

St. Vincent's Multispecialty Group, Inc. (the "Tenant" or "Plaintiff") has filed a motion for a temporary restraining order ("TRO") and preliminary injunction against CPI/AHP Cross Street Mob Owner, LLC (the "Landlord" or "Defendant"). The Tenant seeks to enjoin the Landlord from taking any action to oust or evict the Tenant and its medical practice from its leased space in Suite 200 (the "Premises") in the Landlord's medical office building located at 40 Cross Street, Norwalk, Connecticut (the "Building") or to charge the Tenant enhanced rent for an alleged holding over period. *See* Pl. Mot. for TRO and Prelim. Inj., ECF No. 3 (Dec. 23, 2021) ("Pl. Mot."); *see also* Pl. Mem. of Law in Supp. of its Mot. for TRO and Prelim. Inj., ECF No. 3-1 (Dec. 23, 2021) ("Pl. Mem.").

For the reasons stated below, the Court **DENIES** the motion for a TRO and preliminary injunction.

**I.    FACTUAL BACKGROUND**

On or about October 30, 2013, the Tenant allegedly entered into a Lease Agreement ("Lease") with MCP Medical, LLC, the landlord of the Premises at that time, for 12,907 square feet of office space in Suite 200 in the Landlord's medical office building located at 40 Cross

1

Street, Norwalk, Connecticut. Compl. ¶ 6, ECF No. 1 (Dec. 23, 2021) ("Compl."). The Landlord acquired the Building, "subject to the Lease", in or about 2017. *Id.* ¶ 8.

Since 2004, the Tenant allegedly has used the Premises to provide cardiology services to "thousands of cardiac patients, many of whom are underserved, indigent, frail, and/or elderly and many of whom cannot afford, or lack easy access to transportation beyond the area where the Premises are located." *Id.* ¶ 7. By its terms, the Lease expires on December 31, 2021. *Id.* ¶ 12.

In June of 2021, the Landlord's agent, Anchor Health Properties ("Anchor"), allegedly proposed a renewal of the Lease to the entity responsible for administration of the Lease as an agent for the Tenant: HHC Real Estate. *Id.* ¶¶ 9–13.

On July 17, 2021, Stella Stein, Anchor's Vice President for Asset Management, allegedly sent by e-mail a Letter of Intent to renew the Lease for five years to Michael Sher, Senior Director of Real Estate at HHC Real Estate. *Id.* ¶ 14. In her e-mail, Ms. Stein stated that she was "pleased to present [HHC Real Estate] with the attached Letter of Intent for [their] review and execution." *Id.*; *see also* Ex. A to Decl. of Michael J. Sher, ECF No. 3-2 (Dec. 23, 2021) ("Ex. A").

The Letter of Intent, which Plaintiff attaches to its instant motion, contains terms of an amendment to the Lease, including "identification of the Premises, a five-year term extending the current Lease, base rent of $24.00 per rentable square foot with a fixed annual escalator of $0.50 per rentable square foot, additional rent, and base tax year and base expense year of calendar year 2021." Compl. ¶ 18; *see also* Ex. B to Decl. of Michael J. Sher, ECF No. 3-2 (Dec. 23, 2021) ("Ex. B"). The Letter of Intent also expressly states, however, that "th[e] letter is not intended to create, and shall not constitute, a legally binding obligation between Landlord and

Tenant" and that "neither Landlord nor Tenant shall have any liability to the other with respect to the transaction contemplated herein until the parties have both executed the Lease." Ex. B at 2.

On June 17, 2021, Michael Sher, the Senior Director of Real Estate at HHC Real Estate, allegedly sent by e-mail the signed Letter of Intent back to Ms. Stein.[1] Compl. ¶ 16; *see also* Ex. B at 2 (signature by Thomas Vaccarelli); Ex. A at 4 (e-mail from Michael Sher to Stella Stein on June 17, 2021 stating that he is "forwarding the attached executed Letter of Intent").

On June 28, 2021, Ms. Stein sent an email to Mr. Sher with the amendment "for . . . review and execution." Compl. ¶ 19; Ex. A at 3. She attached to it the Amendment to the Lease Agreement (the "Amendment"), which allegedly incorporated "the essential terms from the Letter of Intent[.]" Compl. ¶ 19. The Tenant alleges that the "remaining provisions of the Amendment were [ ] standard, boilerplate language." *Id.*; *see also* Ex. C to Decl. of Michael J. Sher, ECF No. 3-2 (Dec. 23, 2021) ("Ex. C").

On July 30, 2021, Mr. Sher sent an e-mail to Ms. Stein stating that "we are absolutely proceeding with the amendment" and that a lease specialist would be reaching out in the next few days. Compl. ¶ 21; Ex. A at 2. Thereafter, "HHC Real Estate [allegedly] tried to contact Anchor to discuss the logistics of the renewal but Anchor [allegedly] did not return the calls or emails."[2] Compl. ¶ 23.

The Tenant alleges that Anchor "remained silent" about the Amendment until October 1, 2021, when Ms. Stein sent Mr. Sher the following e-mail:

---

[1] At the end of the Letter of Intent, Ms. Stein's name appears in typed form with an indication that she was an "Authorized Agent for CPI/AHP Cross Street MOB." Compl. ¶ 15. "Although there was a space for her to sign, she did not manually sign the letter." *Id.*; *see also* Ex. B.

[2] On Tuesday, September 14, 2021, Mr. Sher sent an email to Ms. Stein stating that his office had "been unable to reach [Ms. Stein] in regards to finalizing the amendment for 40 Cross Street" and requested a specific day and time for a phone call "to discuss any outstanding issues and next steps[.]" Ex. A at 1.

> I regret to inform you that the Suite 200 at 40 Cross Street where St. Vincent's Multispecialty Group, Inc[.] currently holds a lease is no longer available for renewal as we are rescinding the draft lease renewal. We understand you will need to take the necessary steps to find comparable space in the market . . . .

Compl. ¶ 24; Ex. A at 1 (email from Ms. Stein to Mr. Sher on October 1, 2021). In response, the Tenant allegedly has since been negotiating with the Landlord to honor its commitment in the Amendment. Compl. ¶ 27.

In early October 2021, Ms. Stein and Benjamin Ochs, Chief Executive Officer of Anchor, allegedly "represented to Mr. Sher that while the Landlord would not revert to the Amendment, it was willing to allow the Tenant to continue occupying the Premises for an additional six months through June 2022, with Tenant paying the usual rent and without paying the enhanced rent applicable to a holding over period." *Id.* ¶¶ 25, 28. In response, "Mr. Sher [allegedly] informed Mr. Ochs that the complexities of relocating the medical office would require no less than [twenty-four] months." *Id.* ¶ 28. Mr. Ochs allegedly denied that request for an extension.[3] *Id.*

On October 29, 2021, Jill J. Higgins, Anchor's Senior Vice President of Property Management, allegedly sent a letter to Plaintiff "remind[ing] the Tenant that the Lease is expiring on December 31, 2021 and inquir[ing] whether the Tenant intends to exercise its right to hold over for 30 days until January 30, 2022[.]" *Id.* ¶ 29. In the same letter, Ms. Higgins allegedly informed the Tenant that "there is a signed agreement for this space with a prospective tenant and Landlord requires possession of the Premises." *Id.*

On December 21, 2021, the Landlord allegedly served on the Tenant a Notice to Quit the Premises by December 31, 2021. *Id.* ¶ 30; *see also* Ex. E to Decl. of Michael J. Sher, ECF No. 3-2 (Dec. 23, 2021) ("Ex. E"). After this date, the Landlord allegedly "will begin charging the Tenant

---

[3] The Tenant also alleges that the six-month extension of the Lease proposed in early October 2021 no longer remains available to it. Compl. ¶ 29.

enhanced rent at the applicable hold over rates and will commence eviction proceedings." Compl. ¶ 40.

The Tenant alleges that, because the cardiac medical practice is "too sophisticated and complex to pack up" in less than twenty-four months, any imminent displacement "will not only cause the Tenant to suffer millions of dollars in losses but will cause irreparable harm to the treatment and health of its many patients."[4] *Id.* ¶¶ 28, 35.

## II.     PROCEDURAL BACKGROUND

On December 23, 2021, the Tenant filed a Complaint against the Landlord in federal court. Compl. In its Complaint, the Tenant asserts four claims for relief: (1) a declaratory judgment that the parties entered into the Amendment and that under the Amendment the Tenant is entitled to continue leasing the Premises for five years through December 31, 2026; (2) breach of contract; (3) anticipatory breach of contract; and (4) violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). *Id.*

On the same day, the Tenant filed this motion for a TRO and preliminary injunction seeking to enjoin the Landlord from taking any action to oust or evict the Tenant from its leased space in Suite 200 in the Landlord's medical office building located at 40 Cross Street, Norwalk, Connecticut or to charge the Tenant enhanced rent for an alleged holding over period. Pl. Mot.; Pl. Mem.

The amount in controversy allegedly exceeds $75,000 excluding interest and costs, and involves parties from different states. Compl. ¶¶ 1–3.

---

[4] Specifically, the Tenant alleges that it cannot move hospital-based cardiac diagnostic services to a new location until it has applied for and obtained a Certificate of Need Determination from the State of Connecticut Office of Health Strategy authorization relocation. Compl. ¶¶ 33–34. "If the Office of Health Strategy determines that a new Certified of Need must be applied for and obtained for the relocation, the process will take even longer." *Id.* ¶ 33. The Tenant does not, however, allege the actual or even estimated length of this process.

## III. STANDARD OF REVIEW

Preliminary injunctive relief "is an extraordinary and drastic remedy . . . that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted). To show entitlement to a preliminary injunction, the moving party must demonstrate (a) that he or she will suffer "irreparable harm" in the absence of an injunction, and (b) either (1) a "likelihood of success on the merits or (2) sufficiently serious questions going to the merits [of the case] to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405–06 (2d Cir. 2011) (internal quotation marks and citation omitted). To demonstrate irreparable harm, Plaintiff must show an "injury that is neither remote nor speculative, but actual and imminent." *Grand River Enter. Six Nations, Ltd. V. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation and internal quotation marks omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983) (injunctive relief cannot be provided if claimed injury is speculative or remote).

## IV. DISCUSSION

The Tenant seeks to enjoin the Landlord from: (1) taking any action to oust or evict the Tenant and its medical practice from its leased space in Suite 200 in the Landlord's medical office building located at 40 Cross Street, Norwalk, Connecticut or (2) charging the Tenant enhanced rent for an alleged holding over period. Pl. Mot.; Pl. Mem.

The Court will address each of these requested forms of relief below.

1. **Eviction Action**

The federal Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The exceptions to this rule are narrowly construed. *See Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 630 (1977); *Mitchum v. Foster,* 407 U.S. 225, 228–29 (1972).

"The three excepted circumstances are (i) the express provisions of another act of Congress authorizing such an order; (ii) necessity in aid of the federal court's jurisdiction and (iii) the need to protect or effectuate the federal court's judgments." *Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2d Cir. 1990) (citing *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287–88 (1970)).

"Courts in this Circuit have repeatedly held that the Anti–Injunction Act bars a federal court from enjoining state-court eviction proceedings." *Allen v. N.Y.C. Hous. Auth.*, No. 10-CV-168 (CM) (DCF), 2010 WL 1644956, at *3 (S.D.N.Y. Apr. 20, 2010);[5] *see also Markey v. Ditech Fin. LLC*, No. 3:15-CV-1711 (MPS), 2016 WL 5339572, at *2 (D. Conn. Sept. 22, 2016) (denying preliminary injunctive relief on the basis of the Anti-Injunction Act where plaintiff sought "stay of . . . summary process [eviction] action"); *Watkins v. Ceasar*, 88 F. App'x 458, 459 (2d Cir. 2004) (summary order) (upholding denial of motion for preliminary "injunction, in which plaintiff sought to enjoin summary eviction proceedings brought by his landlords in the Civil Court of the City of New York" under the Anti-Injunction Act).

---

[5] Significantly, the court in *Allen* reached the conclusion that the Anti-Injunction Act barred the court from enjoining state-court eviction proceedings before housing court proceedings began. *See Allen*, 2010 WL 1644956, at *3–*4 (denying motion for injunction against landlord from initiating state-court eviction proceedings where "[n]o [h]ousing [c]ourt proceeding is currently pending against Plaintiff"); *see also Atl. Coast Line R. Co.*, 398 U.S. at 297 ("Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.").

7

Here, the injunction sought by Plaintiff of state court eviction proceedings is barred by the Anti-Injunction Act, as it does not fall within the three exceptions to the Anti-Injunction Act. The first exception to the Act—"as expressly authorized by Act of Congress," 28 U.S.C. § 2283—only applies when Congress has enacted a statute that "create[s] a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding," *see Mitchum* 407 U.S. at 237; *see also Allen*, 2010 WL 1644956, at *3 (citing the same). "No such statute exists that Plaintiff could rely on here to stay eviction proceedings against [them] in state court." *Allen*, 2010 WL 1644956, at *3.

The second exception—"where necessary in aid of [the federal court's] jurisdiction," 28 U.S.C. § 2283—is triggered only if "some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case," *see Atl. Coast Line R.R. Co.,* 398 U.S. at 295; *see also Allen*, 2010 WL 1644956, at *3 (citing the same). A potential proceeding in state court, however, would in no way impair this Court's authority to resolve pending claims against the Landlord for damages or declaratory relief.

The third exception to the Act "to protect or effectuate [the federal court's] judgments," 28 U.S.C. § 2283—"only applies where an issue has been previously presented to and decided by the federal court", *see Allen*, 2010 WL 1644956, at *3 (citing *MLE Realty Assocs. v. Handler,* 192 F.3d 259, 261–62 (2d Cir. 1999)). The third exception therefore also is inapplicable here, and the Court lacks a basis to provide injunctive relief in accordance with the Anti-Injunction Act.

Accordingly, the Court will deny the motion for preliminary injunction and temporary restraining order to the extent that it seeks to prevent state court eviction proceedings.

### 2. Enhanced Rent

To the extent that the Tenant seeks a preliminary injunction to avoid paying enhanced rent during the holdover period after December 31, 2021, the alleged harm is monetary in nature, and, therefore, not irreparable. *See Brenntag Intern. Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) ("As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm." (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (*per curiam*))); *see also Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (defining irreparable harm as an "injury for which a monetary award cannot be adequate compensation" (quoting *Jackson Dairy*, 596 F.2d at 72)).

Although the substantial loss of business or customer goodwill is "not measurable entirely in monetary terms," *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37–38 (2d Cir. 1995) (internal citation omitted), the Plaintiff has not pled that enhanced rental rates would result in such harms. The Court therefore finds that the Tenant is not entitled to injunctive relief barring enhanced rent during the alleged holdover period, as the alleged harm is not irreparable.

The Court further notes that any allegation that irreparable harm exists because "thousands of patients . . . will be deprived of treatment while the Tenant is in limbo searching for new offices after December 31, 2021", *see* Pl. Mot. at 2, is unsubstantiated, *see Rockwell Intern. Systems, Inc. v. Citibank*, N.A., 719 F.2d 583, 586 (2d Cir. 1983) (stating that in a motion for injunctive relief, "the moving party . . . bears the burden of proving irreparable injury").

9

Indeed, the Plaintiffs concede that eviction proceedings have not yet begun, and that they are entitled to a holdover period, albeit with a potentially enhanced rental rate. Compl. ¶¶ 29, 40. Before any ouster of the Tenant from the Premises can occur, the Landlord will be required to undergo Connecticut state court eviction proceedings to remove Tenant from the Building, and those proceedings have not yet begun. Any alleged harm resulting from potential eviction proceedings, therefore, is far from imminent.[6] *See Allen*, 2010 WL 1644956, at *3 (finding no imminent harm where "no Housing Court proceeding is currently pending against Plaintiff and, even if the [landlord] decides to evict . . . , it must first serve him with a notice to vacate, commence a holdover proceeding in Housing Court, and obtain a judgment of possession and a warrant of eviction").

Accordingly, the Court will deny the motion for a TRO and preliminary injunction.

V.      **CONCLUSION**

For the foregoing reasons, the Court **DENIES** the motion for a TRO and preliminary injunction.

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of December, 2021.

                                                /s/ Victor A. Bolden
                                                Victor A. Bolden
                                                United States District Judge

---

[6] The Court notes that even if the Anti-Injunction Act did not bar the preliminary injunction against state court eviction proceedings, the lack of irreparable harm would bar injunction against state court eviction proceedings for all the reasons stated in this section, including lack of imminence.